1 | Carol Lynn Finklehoffe. CA Bar No. 220309
2 | LIPCON MARGULIES ALSINA & WINKLEMAN
3 | One Biscayne Tower, Suite 1776
  | Miami, FL 33131
4 | Tel: 305-373-3016
  | Fax: 305-373-6204
5 | Email: cfinklehoffe@lipcon.com
6 | *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

GREGORY EICHER, individually and on behalf of all similarly situated, Class Plaintiffs,

                   Plaintiffs,

vs.

PRINCESS CRUISE LINES, LTD., a corporation for profit,

                   Defendant.

CASE NO.:

**PLAINTIFF'S CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, GREGORY EICHER, brings this class action, individually and on behalf of all similarly situated passengers on the *Grand Princess*, and hereby sue Defendant PRINCESS CRUISE LINES, LTD. (hereinafter "PRINCESS"), a for profit corporation, and for good cause alleges:

**THE PARTIES AND JURISDICTION**

1.     Plaintiff, GREGORY EICHER, is sui juris, is a resident of Arizona and citizen of the United States.

2.     At all times material, Defendant PRINCESS is incorporated in Bermuda, with its worldwide headquarters, principal address and principal place of business

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

located in the County of Los Angeles, California.

3.     The matter in controversy exceeds the required amount, exclusive of interest and costs, and is a class action brought under this Honorable Court's jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the event that class status is not certified, then this matter is brought under the admiralty and maritime jurisdiction of this Honorable Court.

4.     This action is being pursued in this Court, as opposed to state court as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. §1333, because Defendant PRINCESS unilaterally inserts a forum selection clause into its cruise tickets that requires its passengers to file cruise-related suits *only in this federal district and division,* as opposed to any other place in the world.

5.     Defendant PRINCESS, at all times material hereto, personally or through an agent:

   a.   Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b.   Was engaged in substantial activity within this state;

   c.   Operated vessels in the waters of this state;

   d.   Purposefully availed themselves of the benefits of conducting activities in California by purposefully directing their activities toward the state, thereby obtaining the benefits and protections of the state's laws;

   e.   The acts of the Defendant PRINCESS set out in this Complaint occurred in whole or in part in this state and/or county;

   f.   The cruise line ticket for the Plaintiff requires that suit be brought in this Court against the named Defendant PRINCESS in this action.

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

6.     At all times material, Defendant PRINCESS was and is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports throughout the world including, Los Angeles, California, San, Francisco, California, and San Diego, California.

7.     At all times material, Defendant PRINCESS derived substantial revenue from cruises originating and terminating in various ports throughout the world including, Los Angeles, California, San, Francisco, California, and San Diego, California.

8.     At all times material, Defendant PRINCESS operated, managed, maintained, supervised, chartered, and/or controlled a large commercial vessel named *Grand Princess* (commonly referred to as "the subject vessel").

9.     At all times material, Defendant PRINCESS transported fare-paying passengers on cruises aboard its vessel *Grand Princess*.

10.    This action is an action under general maritime law and the laws of California, as applicable.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

11.    This Class Action lawsuit involves Defendant (a) knowing and intentional decision to proceed with a 16-day cruise on February 21, 2020, knowing at least one of its passengers from the prior voyage had symptoms of coronavirus; (b) knowing and intentional decision to conceal from passengers at any time prior to boarding and/or while they were already onboard that there were passengers on the prior voyage with symptoms of the coronavirus and/or other passengers with symptoms of the coronavirus on the subject voyage; and (c) knowing and intentional decision to wait one day to order passengers to isolate in their staterooms after being informed that the passenger who presented to the *Grand Princess* medical facility with symptoms of the coronavirus on February 20, 2020, tested positive for COVID-19. In so doing, Defendant subjected over 2,000 passengers to the highly contagious

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

coronavirus, and exposing passengers to actual risk of immediate physical injury and death.

**Factual Allegations Surrounding the Cruise Industry and the Coronavirus**

12.     In the recent months, there has been a worldwide outbreak of a new virus, the coronavirus, also known as COVID-19. The virus originated in China, and quickly spread throughout Asia, Europe, and most recently, North America.

13.     The dangerous conditions associated with COVID-19 include <u>its manifestations</u> – severe pneumonia, acute respiratory distress syndrome (ARDS), septic shock and/or multi-organ failure[1] – and/or <u>its symptoms</u> – fever, dry cough, and/or shortness of breath[2] – as well as <u>the high fatality rate associated with contracting the virus</u>.[3] The dangerous conditions associated with COVID-19 also include <u>its extreme contagiousness</u>. For example, a person with COVID-19 infects, on average, another 2.5 people, and COVID-19 is therefore more contagious than Ebola or Influenza.[4]

14.     There have been over one million cases worldwide and over one hundred thousand deaths as a result of the coronavirus. Those fatalities have largely been amongst the elderly population, and those with underling medical complications.

15.     Outlined below is a timeline of events relevant to this Class Action lawsuit against Defendant. This timeline supports Defendant having actual knowledge

---

[1]  *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order*, https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

[2]  *See* Mayo Clinic, *Symptoms and Causes*, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last accessed April 6, 2020); *see also* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

[3]  *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf (identifying a 3.6% global fatality rate); Journal of the American Medical Association, *Case-Fatality Rate and Characteristics of Patients Dying in relation to COVID-19 in Italy*, https://jamanetwork.com/journals/jama/fullarticle/2763667 (identifying a 7.2% and 2.3% fatality rate in Italy and China, respectively).

[4] Popular Science, *COVID-19 Contagiousness*, https://www.popsci.com/story/health/how-diseases-spread/.

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

of the dangerous conditions and/or explosive contagiousness associated with COVID-19 at the time the first Class Member contracted COVID-19:

    a.   <u>December 31, 2019</u> – The local government in Wuhan, China, confirmed with the World Health Organization (hereinafter "WHO") that local health authorities in Wuhan were treating an influx of dozens of patients with what appeared to be novel cases of pneumonia with an unknown cause.

    b.   <u>January 5-7, 2020</u> – China announced that the novel pneumonia cases in Wuhan were not caused by severe acute respiratory syndrome (hereinafter "SARS") or middle-east respiratory syndrome (hereinafter "MERS") – but COVID-19 – which belongs to the highly-contagious family of coronaviruses, including SARS and MERS.

    c.   <u>January 11, 2020</u> – The Wuhan Municipal Health Commission announced the first death caused by COVID-19.

    d.   <u>January 20, 2020</u> – A situation report published by the WHO confirmed COVID-19 cases outside of mainland China in Thailand, Japan and South Korea, which the WHO believed to have been exported from Wuhan, China. The situation report also identified 282 positive COVID-19 diagnoses worldwide with 278 of those positive cases within China.

    e.   <u>January 23, 2020</u> – Chinese authorities take the <u>unprecedented</u> measure of closing off Wuhan – a city of over 11,000,000 people – to stop the spread of COVID-19.

    f.   <u>January 24, 2020</u> – The United States Coast Guard issued a Maritime Safety Information Bulletin (MSIB) on January 24, 2020, the entitled *Novel Coronavirus Precautions*, directed to all vessel owner and operators[5].  The MSIB alerted shipowners and operators of the outbreak, provided guidance and mandated that they report sick or deceased crew/passengers to the Center for Disease Control (hereinafter the "CDC").

    g.   <u>January 24, 2020</u> – the Department of Transportation Maritime Administration (hereinafter "MARAD") issued a Maritime Security Communication with Industry (hereinafter "MSCI") advisory entitled

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

---

[5] *See,* https://www.maritimedelriv.com/storage/app/media/Agencies/USCG/USCG_MSIB/USHQ_MSIB_01_20_MTS_Precautions.pdf

*2020-002A-Global-Novel Coronavirus Outbreak*.[6]

h. <u>January 30, 2020</u> – WHO declared COVID-19 a "global health emergency" – recognizing that COVID-19 posed a risk beyond China. The U.S. Department of State issued a Level 4 (highest level) travel advisory as it related to U.S. citizens who planned to travel to China.[7]

i. <u>January 31, 2020</u> – MARAD issued another MSCI advisory entitled *2020-0004-Global-Novel Coronavirus Outbreak*[8] again alerting shipowners and operators, such as the Defendant PRINCESS, to coronavirus outbreak and reporting requirements to the CDC. MARAD issued a follow-up MSCI advisory on February 8, 2020 entitled *2020-0005-Global-Novel Coronavirus Outbreak*.[9]

j. <u>February 2, 2020</u> – China reports that the death toll from COVID-19 in mainland China (361) exceeded the death toll in mainland China from the SARS outbreak in the early 2000s (349).

k. <u>February 5, 2020</u> – Chinese officials announced that nearly 500 people in mainland China have died as a result of COVID-19.

l. <u>February 5, 2020</u> (*Diamond Princess*) – Passengers aboard the *Diamond Princess* near Yokohama, Japan began a two-week quarantine after nine (9) passengers and one (1) crewmember tested positive for COVID-19 while aboard the vessel. See *infra* for further details.

m. On <u>February 13, 2020</u> – The CDC published the *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections. See *infra* for further details.

16. The CDC's February 13, 2020, *Interim Guidance for Ships on Managing*

---

[6] *See*, https://www.maritime.dot.gov/content/2020-002a-global-novel-coronavirus-outbreak

[7] Ryan Goodman and Danielle Schulkin, *Timeline of the Coronavirus Pandemic and U.S. Response*, Just Security, April 13, 2020, https://www.justsecurity.org/69650/timeline-of-the-coronavirus-pandemic-and-u-s-response/.

[8] *See*, https://www.maritime.dot.gov/content/2020-004-global-novel-coronavirus-outbreak

[9] *See*, https://www.maritime.dot.gov/content/2020-005-global-novel-coronavirus-outbreak

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

*Suspected Coronavirus Disease 2019*, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections aboard ships, like the *Grand Princess*. *See* the Memorandums cited at footnote 1.

17.    In view of the fact that Defendant PRINCESS has its principal place of business in the United States, and operate numerous cruise vessels which originate from and/or stop at ports within the U.S., as early as February 13, 2020, Defendant PRINCESS knew and/or should have been aware of this Memorandum, including, but not limited to, the dangerous conditions and/or explosive contagiousness associated with COVID-19, and it's all but certain presence aboard the *Grand Princess* at that time.

18.    This Memorandum provided cruise vessel operators, like Defendant PRINCESS, with numerous helpful considerations to assist in detecting and preventing the spread of COVID-19 amongst its crewmembers, passengers and its vessels at large, some of which include:

- "Early detection, prevention, and control of Coronavirus Disease 2019 (COVID-19) on ships **is important** to protect the health of travelers on ships and to avoid transmission of the virus by disembarking passengers and crew members who are suspected of having COVID-19";

- "Identifying and isolating passengers and crew with possible symptoms of COVID-19 as soon as possible **is needed** to minimize transmission of this virus";

- "To reduce spread of respiratory infections including COVID-19, CDC **recommends** that ships encourage crew members and passengers to

    - Postpone travel when sick

    - Watch their health

    - Self-isolate and inform the onboard medical center immediately if they develop a fever (100.4ºF / 38ºC or higher), begin to feel

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

feverish, or develop other signs or symptoms of sickness

- Use respiratory, cough, and hand hygiene

  - Advise passengers and crew of the importance of covering coughs and sneezes with a tissue. Dispose used tissues immediately in a disposable container (e.g., plastic bag) or a washable trash can.

  - Remind passengers and crew members to wash their hands often with soap and water, especially after coughing or sneezing. If soap and water are not available, they can use a hand sanitizer containing 60%-95% alcohol)"

- "**Deny boarding of a passenger or crew member** who is suspected to have COVID-19 infection based on signs and symptoms plus travel history in China or other known exposure at the time of embarkation";

- "Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 **should be** quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members **should** self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure";

- "**Isolate passengers or crew onboard** who are suspected of having COVID-19 infection in a single-occupancy cabin with the door closed until symptoms are improved."

*See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

19.     Defendant PRINCESS and the cruise industry got an early warning of how easily the virus could spread on its massive ocean liners when the first cases emerged on the *Diamond Princess*, also owned and operated by Defendant PRINCESS, in early February 2020 in Yokohama Harbor.  The outbreak began with ten cases, and rapidly multiplied to seven hundred cases, as a result of the flawed two

week quarantine on the ship.

20.    The Center for Disease Control (CDC) issued a statement on February 18, 2020 that "the rate of new reports of positives new on board [the *Diamond Princess*], especially among those without symptoms, **highlights the high burden of infection on the ship and potential for ongoing risk**." Seven of the *Diamond Princess'* passengers died as a result of COVID-19.

21.    It would only stand to reason, that knowing of these prior traumatic outbreaks on another of its vessels less than a month prior to the subject voyage on the *Grand Princess*, that PRINCESS would have learned to take all necessary precautions to keep its passengers, crew and the general public safe. This likely would have meant that the voyage, in its entirety, would have been cancelled. Despite knowing full well of the tremendous risk faced by all the passengers (and crew) aboard, Defendant PRINCESS set sail. For this reason and those further stated herein, Plaintiff and others similarly situated have contracted the coronavirus and/or are now at an actual risk of immediate physical injury and death proximately caused by Defendant PRINCESS's negligence.

## Factual Allegations Surrounding the Coronavirus Outbreak on the *Grand Princess* Voyage

22.    On February 11, 2020, passengers embarked on the *Grand Princess* in San Francisco, California, to Mexico, which for sixty-two passengers would be a 25-night cruise with the *Grand Princess* returning to San Francisco, California on February 21, 2020.

23.    On or about February 19, 2020, PRINCESS became aware of at least one passenger showing symptoms of COVID-19 onboard the *Grand Princess*, but PRINCESS did not take any extra precautions.

24.    According to Grant Tarling, MD, MPH, the Chief Medical Officer of Carnival Corporation, PRINCESS's parent company, PRINCESS believed the

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

infected passenger was already carrying the coronavirus when he boarded the *Grand Princess* on February 11, 2020.[10] Yet, PRINCESS had no adequate passenger and/or crewmember medical screening methods at the time of boarding despite their knowledge regarding COVID-19.

25.    On February 20, 2020, the infected passenger reported to the *Grand Princess* medical facility for medical treatment due to symptoms of the coronavirus according to Dr. Tarling. This passenger reported acute respiratory symptoms for about six to seven days before seeking treatment. Accordingly, this information would constitute a "hazardous condition" pursuant to 33 CFR § 160.216, and would have required PRINCESS to report this information pursuant to 42 CFR 71.1.

26.    On February 21, 2020, in the morning, the *Grand Princess* arrived back in San Francisco, California from its previous voyage. Within just a few hours, PRINCESS allowed new passengers to board the ship without adequately sanitizing the *Grand Princess*, including, but not limited to, incorporating UV lights into the filtration systems and/or antimicrobial sanitizing equipment. In addition, PRINCESS did not have a third-party indoor environmental professional verify that common use areas and surfaces of the vessel were reasonably safe for passengers and/or crewmembers.

27.    Before boarding the *Grand Princess* on February 21, 2020, passengers contacted PRINCESS over their concerns of the vessel's safety surrounding the coronavirus. PRINCESS assured passengers its vessel was not affected by the coronavirus, was safe, and that there was no need for concern. In addition, PRINCESS instructed passengers that they would *not* be reimbursed if they cancelled their February 21, 2020 voyage on the *Grand Princess*.

---

[10] Thomas Fuller, John Eligon, and Jenny Gross, The New York Times, *Cruise Ship, Floating Symbol of America's Fear of Coronavirus, Docks in Oakland*, March 9, 2020, https://www.nytimes.com/2020/03/09/us/coronaviruscruise-ship-oakland-grand-princess.html (last visited April 9, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

28.     Relying on PRINCESS' assurances, passengers embarked on the *Grand Princess* on February 21, 2020 for a Hawaii cruise.

29.     Defendant did not inform passengers that were scheduled to board the *Grand Princess* on February 21, 2020, that passengers from the prior voyage had symptoms of COVID-19 and/or inform passengers that other passengers aboard the *Grand Princess* had been exposed to and might be carrying COVID-19 and/or that passengers were at a significantly increased  risk of exposure to COVID-19. If passengers were made aware of this significantly increased risk of exposure prior to boarding the ship in San Francisco, California they would have never boarded the *Grand Princess*, and/or never contracted COVID-19.

30.     Before boarding the *Grand Princess*, PRINCESS failed to deny boarding to passengers and/or crewmembers who showed symptoms of the coronavirus and/or travel history in China or other known exposure at the time of embarkation, including but not limited to, Japan, Italy, and South Korea. PRINCESS's actions and/or omissions were a direct violation of the CDC's Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019.

31.     During the boarding process on February 21, 2020, passengers were simply asked to fill out a piece of paper confirming they were not sick. Not one passenger was questioned, nor medically examined, including, but not limited to, temperature taken, before PRINCESS allowed passengers onboard the *Grand Princess*. As a result, PRINCESS exposed Plaintiff and others similarly situated to exposure of COVID-19 and/or to an actual risk of immediate physical injury and/or death.

32.     To make matters even worse, there were sixty-two passengers onboard the February 21, 2020 voyage on the *Grand Princess*, who were also on the prior voyage, that were exposed to the passengers on the prior voyage that tested positive for COVID-19. Of the sixty-two passengers, at least two of the passengers were

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Plaintiff's Class Action Complaint and Demand for Jury Trial

showing symptoms of COVID-19 that PRINCESS was aware of.

33.    During the voyage, as should have been anticipated, a coronavirus outbreak occurred on the *Grand Princess*. The outbreak was considered so severe that the *Grand Princess* was denied entry to ports-of-call due to how contagious, novel, and deadly the coronavirus is.

34.    On February 25, 2020, PRINCESS sent emails to passengers who disembarked on the prior voyage on February 21, 2020, all while Plaintiff and others similarly situated were onboard the *Grand Princess*, that these prior passengers may have been exposed to COVID-19 while on their *Grand Princess* cruise. However, PRINCESS did not inform all passengers onboard the *Grand Princess* at the same time their potential exposure to COVID-19.

35.    On February 26, 2020, the *Grand Princess* docked in Nawiliwili, Hawaii, and sailed to other Hawaiian Islands until departing the Hawaiian Islands for Ensenada, Mexico on February 29, 2020.

36.    On March 3, 2020, the passenger on the prior voyage who visited the *Grand Princess* medical facility with symptoms of the coronavirus on February 20, 2020, tested positive for COVID-19. This was confirmed and published by Place County Public Health on March 3, 2020. *See* CBS Sacramento, *Placer County Confirms Second Coronavirus Case, Declares Local Health Emergency*, CBS Local, March 3, 2020, https://sacramento.cbslocal.com/2020/03/03/placer-county-coronavirus-health-emergency/ (last visited April 13, 2020).

37.    However, PRINCESS waited until March 4, 2020, to inform Plaintiff and others similarly situated of their potential exposure to COVID-19 due to the prior passenger testing positive for COVID-19. Only the sixty-two passengers on the prior voyage on the *Grand Princess* were advised to quarantine in their cabin on March 4, 2020. In addition, PRINCESS informed passengers that the *Grand Princess* would no longer be sailing to the scheduled port-of-call of Ensenada, Mexico, and instead

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

would return to San Francisco, California. Dr. Tarling issued the following letter to passengers:

### Guests Health Advisory – Coronavirus
**March 4, 2020**

Dear Princess Guest:

I wish to advise you that today we have been notified by the United States Centers for Disease Control and Prevention (CDC) that they are investigating a small cluster of COVID-19 (coronavirus) cases in Northern California connected to our previous *Grand Princess* voyage that sailed roundtrip San Francisco from February 11 to February 21. We are working closely with our CDC partners and are following their recommendations.

**For those guests who sailed with us on our previous voyage and may have been exposed, in an abundance of caution, the CDC requires you to remain in your stateroom until you have been contacted and cleared by our medical staff. A member of our medical team will be calling you between the hours of 8:00 AM and 11:00 AM this morning. You may order room service while you wait for the medical screening to be completed, and we apologize for any inconvenience.**

Please be assured that the health, safety, and well-being of all guests and crew are our absolute priority. The CDC is continuing to actively collect information and has set up a meeting with us this morning to determine what, if any, actions need to be taken during this cruise and on arrival in San Francisco. We have shared essential travel and health data with the CDC to facilitate their standard notification to the State and County health authorities to follow up with individuals who may have been exposed to people who became ill.

As we anticipate that further review of the situation will be necessary on arrival in San Francisco, we will be cancelling the call to Ensenada on Thursday, March 5, in order to sail directly to San Francisco — exact date and time for arrival to be determined. We will keep you updated with information as we finalize plans. To assist you in contacting your family, we are providing free internet and phone service. We will advise you if the need arises to make changes to your onward travel plans post-cruise.

38.     On March 4, 2020, around 4:00 PM, California Governor Gavin Newsom declared a state of emergency due to the COVID-19 outbreak on the *Grand Princess* and due to the passengers on the prior voyage succumbing to the virus. In addition, Governor Newsom ordered that the *Grand Princess* would not be able to dock in San Francisco, and instead would be forced to stay off the coast of San Francisco, California.

39.     Later that afternoon on March 4, 2020, PRINCESS cancelled only a few large public congregations, such as, the events in the theater, but were allowed unfettered access to the pools, gym, and buffets, which further put passengers at an actual risk of exposure to coronavirus. Additionally, PRINCESS proceeded with the

Plaintiff's Class Action Complaint and Demand for Jury Trial

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Formal Night where passengers are encouraged to socialize and gather. PRINCESS actions and/or omissions were in direct violation of CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019, revised on February 18, 2020.

40.    In regards to managing passengers and crew after exposure, the CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019 states:

"Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 should be quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members should self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure."[11]

41.    Finally, on or about March 5, 2020, around 1:00 PM, the captain of the *Grand Princess* requested all passengers to remain isolated in their staterooms. PRINCESS decision came at least one day after PRINCESS was aware that the passenger on the prior voyage tested positive for COVID-19. PRINCESS' notice to passengers advising to quarantine in their staterooms is shown below:

[the remainder of this page has intentionally been left blank]

---

[11] *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

March 5, 2020 10:00PM PT

**Grand Princess Update**

In collaboration with the U.S. Centers of Disease Control (CDC) and local authorities, samples were collected today from 45 people on Grand Princess (which includes a mix of guests and team members). The samples were delivered to the California Department of Public Health in Richmond for processing. The results of these tests are expected by tomorrow.

Princess Cruises can confirm there are 3,533 people currently onboard Grand Princess, including 2,422 guests and 1,111 teammates. In total, they represent 54 nationalities.

Following guidelines received today from the CDC, all guests have been asked to stay in their staterooms while test results are pending. Guests are receiving meal deliveries in their staterooms by room service, and additional television and movie options have been added to in-room programming. Guests have also been provided complimentary internet service to stay in contact with their family and loved ones, and the ship's internet bandwidth has been increased.

42.     After PRINCESS advised passengers to quarantine in their staterooms on or about March 5, 2020, crewmembers delivered food and beverages to passengers in their staterooms, but failed to wear any protective gear, including, but not limited to, masks and gloves, when interacting with passengers. As a result, PRINCESS exposed Plaintiff and others similarly situated to exposure of COVID-19 and/or to an actual risk of immediate physical injury and/or death.

43.     On March 9, 2020, the *Grand Princess* was allowed entry in San Francisco, California, to allow for the disembarkation process of passengers. When passengers were instructed to leave their staterooms to meet at disembarkation areas aboard the vessel for further directions, PRINCESS did not direct passengers to distance themselves from other passengers, which further put passengers at an actual, heightened risk of exposure to the coronavirus.

44.     As a result of PRINCESS's grossly negligent  approach to the safety of the passengers on board the *Grand Princess*, its passengers and crew aboard the *Grand Princess* were at an actual risk of immediate physical injury and death.

45.     Consequently, thousands of passengers on the *Grand Princess* were subjected to the risk of contracting the highly contagious coronavirus as a result of

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

PRINCESS's failure to warn passengers at any time prior to boarding and/or while they were already onboard that there were other passengers with symptoms of the coronavirus, and PRINCESS's grossly negligent approach to the safety of the passengers.

46.    As a result of PRINCESS's actions and/or omissions, Plaintiff and others similarly situated were consequently forced to board a plane where they were further exposed to an actual risk of physical injury and forced to quarantine for over two weeks, some of which had high fevers, dry coughs, shortness of breath, and a serious risk of imminent death– all of which could have been easily avoided if simply given the choice to stay at home and reschedule the cruise and/or cancelled the subject cruise and/or implemented reasonable policies and procedures to prevent the spread of the highly contagious coronavirus.

47.    PRINCESS's negligent misconduct was predicated on a profit motive because, simply put, cruise lines like PRINCESS make no money when passengers don't sail.   PRINCESS's knowing, intentional and reckless conduct subjects PRINCESS to the imposition of punitive damages.  This voyage set sail knowing it was a virtual certainty that there would be an outbreak, similar, if not identical, to those which PRINCESS' other vessel (*Diamond Princess*) had already very publicly faced.  This callous disregard for the safety and well-being of its passengers must be answered for.

48.    Each and all of the foregoing conditions, including but not limited to, the actual risk of exposure to the coronavirus, were known to PRINCESS prior to the time the *Grand Princess* set for sail on its voyage on February 21, 2020, with Gregory Eicher and all other passengers similarly situated. PRINCESS subjected over 2,000 passengers to the highly contagious coronavirus, and exposed passengers to actual risk of immediate physical injury and death due to its (a) knowing and intentional decision to proceed with a 16-day cruise on February 21, 2020, knowing at least one

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

of its passengers from the prior voyage had symptoms of coronavirus; (b) knowing and intentional decision to conceal from passengers at any time prior to boarding and/or while they were already onboard that there were  passengers on the prior voyage with symptoms of the coronavirus and/or other passengers with symptoms of the coronavirus on the subject voyage; and (c) knowing and intentional decision to wait one day to order passengers to isolate in their staterooms after being informed that the passenger who presented to the *Grand Princess* medical facility with symptoms of the coronavirus on February 20, 2020, tested positive for COVID-19.

## CLASS ACTION ALLEGATIONS

49.     This action is brought by Plaintiff on his own behalf, and on behalf of all others similarly situated, under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. This action satisfies the applicable numerosity, commonality, typicality, adequacy, predominance, and/or superiority requirements of the Federal Rules of Civil Procedure.

50.     The class so represented by the Plaintiff in this action, and of which Plaintiff is a member, consists of all passengers aboard the *Grand Princess* cruises on February 11, 2020, and/or February 21, 2020.

51.     The class of passengers were subjected to severe distress both physical, psychological and emotional; endured pain and suffering, along with physical and emotional injury as a result of PRINCESS's negligence and/or gross negligence and/or intentional conduct.

52.     The exact number of members of the class is unknown at this time, but it is estimated that there are in excess of 2000 members. The class is so numerous that joinder of all members is impracticable, and the class action procedure is more practical, inclusive, and cost-efficient than numerous individual lawsuits on the same common questions of law and fact. Class Members are readily identifiable from information and records in PRINCESS' custody, control, or possession, and from

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

records kept by the CDC and Department of Health and Human Services. This action satisfies the requirements of Rule 23(a)(1).

53.   There are common questions of law and fact that relate to and effect the rights of each member of the class and the relief sought is common to the entire class. The same misconduct on the part of PRINCESS caused the same or similar injury to each class member.  All class members seek damages under the general maritime law of the United States for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress and Negligence.  Accordingly, this action satisfies the requirement of Rule 23(a)(2).

54.   The claims of Plaintiff are typical of the claims of the class, in that the claims of all members of the class, including Plaintiff, depend upon a virtually identical showing of the acts and omissions of PRINCESS, giving rise to the right of Plaintiff to the relief sought herein. PRINCESS were at all times material hereto engaged in the same conduct to the detriment of the entire class of Plaintiffs. Accordingly, this action satisfies the requirements of Rule 23(a)(3).

55.   Plaintiff is the representative party for the class, and is able to, and will, fairly and adequately protect the interests of the class. There is no conflict between Plaintiff and other members of the class with respect to this action, or with respect to the claims for relief herein. The attorneys for Plaintiff are experienced and capable in the field of maritime claims for cruise ship passenger injury, including class actions, and have successfully represented claimants in other litigation of this nearly exact nature.  Three of the attorneys designated as counsel for Plaintiff, Carol L. Finklehoffe (California Bar Certified Legal Specialist, Admiralty and Maritime), Jason R. Margulies (Florida Bar Board Certified in Admiralty and Maritime Law) and Michael A. Winkleman, will actively conduct and be responsible for Plaintiff's case herein. Accordingly, this action satisfies the requirement of Rule 23(a)(4).

56.   This action is properly maintained as a class action under Rule 23(b)(3)

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

inasmuch as questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy. In support of the foregoing, Plaintiff alleges that common issues predominate and can be determined on a class-wide basis regarding Defendant failure to exercise reasonable care under the circumstances, by *inter alia*, (a) deciding to proceed with a 16-day cruise on February 21, 2020, knowing at least one of its passengers from the prior voyage had symptoms of coronavirus; (b) deciding to conceal from passengers at any time prior to boarding and/or while they were already onboard that there were passengers on the prior voyage with symptoms of the coronavirus and/or other passengers with symptoms of the coronavirus on the subject voyage; and (c) deciding to wait one day to order passengers to isolate in their staterooms after being informed that the passenger who presented to the *Grand Princess* medical facility with symptoms of the coronavirus on February 20, 2020, tested positive for COVID-19.

57. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiff is not aware of any class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with PRINCESS in a single forum, and individual actions by class members, many of whom are citizens of different states would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

58. PRINCESS' passenger ticket contract contains a provision which attempts to limit its passengers' right to file their claims against PRINCESS as a class

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

action, but said provision is void because such an attempt by PRINCESS to limit its liability to passengers violates 46 U.S.C. 30509.[12] *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335–36 (11th Cir. 1984). Additionally, the provision should be deemed null and void as PRINCESS acted intentionally[13] by exposing passengers to a highly contagious virus, which has no current confirmed vaccine nor effective treatment.

**COUNT I**

**NEGLIGENCE AGAINST DEFENDANT**

Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 58, and alleges as follows:

59.    It was the duty of Defendant to provide Plaintiff and all others similarly situated with reasonable care under the circumstances.

60.    Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

61.    Plaintiff was injured due to the fault and/or negligence of Defendant, and/or its agents, servants, and/or employees as follows:

a.    Failure to use reasonable care to provide and maintain a safe voyage for Gregory Eicher and others similarly situated, fit with proper and adequate safety, protection, cleaning products and equipment, especially during a known and escalating, global pandemic of the coronavirus, and

---

[12]  § 30509(a)(1)(A) states: "The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting [...] the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents."

[13]  "[C]ontractual exculpatory clauses absolve the exculpated party only from ordinary negligence and should not be construed to include loss or damage resulting from intentional or reckless misconduct, gross negligence, or the like." *In re New River Shipyard, Inc.*, 355 B.R. 894, 904 (Bankr. S.D. Fla. 2006)

when a prior passenger showed symptoms of the coronavirus, and care; and/or

b.    Failure to adequately warn passengers before boarding the vessel that a passenger on a prior cruise showed symptoms of the coronavirus; and/or

c.    Failure to warn passengers of the dangers and risks of the coronavirus and/or infectious disease, including, but not limited to, failing to inform the passengers of the extent of the prior outbreaks and/or risks and/or symptoms; and/or

d.    Failure to adequately warn passengers before boarding the vessel that the vessel's medical facility, including the medical personnel, equipment, and supplies, would not be able to adequately handle a coronavirus outbreak onboard the *Grand Princess*; and/or

e.    Failure to adequately warn passengers on the subject voyage aboard the *Grand Princess* that a passenger on a prior voyage who showed symptoms of the coronavirus tested positive for the coronavirus before boarding the vessel; and/or

f.    Failure to adequately examine a passenger's and/or crewmember's health condition before allowing them to board the vessel; and/or

g.    Failure to have adequate medical personnel during the boarding process to determine whether to allow boarding to passengers and/or crewmembers; and/or

h.    Failure to have adequate medical personnel to determine whether to allow boarding to passengers and/or crewmembers in accordance with CDC guidelines; and/or

i.    Failure to adequately sanitize and/or disinfect the vessel's common areas and passenger's cabin; and/or

j.    Failure to adequately sanitize and/or disinfect plates, cups, food trays,

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

utensils, ice machines and drinking fountains; and/or

k.     Failure to adequately quarantine passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

l.     Failure to adequately quarantine passengers and/or crewmembers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

m.     Failure to provide prompt, proper, and adequate medical treatment to passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

n.     Failure to serve uncontaminated food; and/or

o.     Failing to practice safe and sanitary food practices; and/or

p.     Failure to adequately and properly eradicate the coronavirus or some other virus causing illness to passengers on the *Grand Princess*; and/or

q.     Failure to take adequate steps to prevent an outbreak of the coronavirus and/or virus and/or infectious disease when it knew or should have known that such outbreaks had occurred on prior cruise voyages; and/or

r.     Failure to take adequate medical precautions when a passenger is exhibiting symptoms of the coronavirus and/or virus and/or infectious disease so that it can be timely diagnosed; and/or

s.     Failure to perform testing on ill passengers to confirm the type and nature of the virus; and/or

t.     Failure to have adequate policies and procedures in place to manage and contain the outbreak and spread of the coronavirus and/or virus and/or infectious disease; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

u.     Failure to provide a sanitary vessel to prevent outbreaks of the coronavirus and/or virus and/or infectious diseases, including, but not limited to, inadequate and/or ineffective cleaning/sanitary procedures and/or lack of equipment and supplies; and/or

v.     Failure to take adequate steps to contain the spread of the coronavirus and/or virus and/or infectious diseases, which it knew or should have known could cause other dangerous medical conditions; and/or

w.     Knowingly refusing to cancel and/or offer refunds to passengers as a result of a passenger on a prior cruise showing symptoms of coronavirus; and/or

x.     Failing to have proper policies and procedures in place to determine whether to offer refunds as a result of the risk of exposing passengers and crew to the highly contagious coronavirus due to a passenger on a prior cruise showing symptoms of coronavirus; and/or

y.     Failing to cancel the voyage and/or offer refunds despite knowing a passenger on a prior voyage showed symptoms of the coronavirus and despite knowing that multiple prior similarly situated voyages ended in widely publicized catastrophe; and/or

z.     Failure to reasonably offer refunds to passengers not wishing to travel on a vessel that had a passenger from a previous voyage showing symptoms of the coronavirus; and/or

aa.     Exposing passengers to unsanitary conditions that they were unprepared for without proper warning from Defendant; and/or

bb.     Failure to provide adequate training, instruction, and supervision to the Defendant employees; and/or

cc.     Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits;

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

and/or

dd.    Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an outbreak of a virus and/or infectious disease, including , but not limited to, the coronavirus; and/or

ee.    Failure to determine and/or appreciate the hazards associated with allowing passengers to congregate within close distances, including within six feet, in common areas of the vessel; and/or

ff.    Knowing, as a result of previous similar incidents and/or passengers showing symptoms of the coronavirus, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

gg.    Failure to amend its cancellation policy to allow the passengers to cancel their cruise without financial penalty in light of a passenger from a previous voyage showing symptoms of the coronavirus and/or the significant actual risk due to the coronavirus global pandemic;

hh.    Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

62.    The above acts and/or omissions caused and/or contributed to Plaintiff and others similarly situated contracting the coronavirus and/or other virus and/or medical complications arising from it because the Plaintiff and others similarly situated would not have boarded the vessel knowing that a passenger on the prior voyage showed symptoms of the coronavirus and presented to the *Grand Princess* medical facility for such, had Defendant and/or its agents, servants and/or employees

adequately warned and/or communicated the foregoing to Plaintiff and others similarly situated.

63.     The above acts and/or omissions caused and/or contributed to the Plaintiff and others similarly situated contracting the coronavirus and/or other virus and/or medical complications arising from it because the coronavirus and/or other virus outbreak would not have occurred but for Defendant's failure to adequately sanitize the vessel in a reasonably safe condition.

64.     At all material times, Defendant had exclusive custody and control of the vessel, *Grand Princess*.

65.     Defendant knew of the foregoing conditions causing Plaintiff and others similarly situated to be exposed to an actual risk of physical injury and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

66.     As a result of the negligence of Defendant, Plaintiff and others similarly situated were:

a.      exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of developing COVID-19, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.      contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff and others similarly situated will suffer the losses and impairments in the future.

WHEREFORE the Plaintiff and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT

Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 58, and alleges as follows:

67.     At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiff and all others similarly situated were placed in an immediate risk of physical harm.  Said risk of physical harm included but is not limited to: contracting the coronavirus and/or virus and/or medical complications arising from it and/or injury and/or death and/or severe emotional and/or psychological trauma.

68.     Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiff and all others similarly situated, such as fear and anxiety, including, but not limited to, of contracting COVID-19. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue,

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties.

69.     Plaintiff and those similarly situated was/were forced to remain on a vessel that had multiple passengers that tested positive of coronavirus and were on the vessel for multiple days, and were then forced to disembark the vessel in tight groups, creating an actual risk of exposure to coronavirus, causing a reasonable fear of great bodily harm and death. At all times material, all similarly effected passengers were in the zone of danger at risk of serious bodily harm, including death due to, *inter alia*, the highly contagious coronavirus, which had and has no vaccine.

70.     Plaintiff and those similarly situated ticketed aboard the *Grand Princess* were placed in the zone of danger as a result of Defendant's dangerously lackadaisical approach in dealing with the coronavirus that was known to be on board the vessel via passengers on a prior voyage that tested positive for the coronavirus.  Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

71.     Plaintiff's and others similarly situated fear of death and experience of mental, emotional and/or physical harm was genuine and well founded and Plaintiff and others similarly situated suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of Defendant. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiff and others similarly situated, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

72.     As a result of the negligent inflection of emotional distress by Defendant, Plaintiff and others similarly situated were:

a.      exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

developing COVID-19, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.   contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff and others similarly situated will suffer the losses and impairments in the future.

WHEREFORE the Plaintiff and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT

Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 58, and alleges as follows:

73.   As set forth above, the actions of Defendant were intentional or reckless and inflicted mental suffering.  Defendant's conduct in *inter alia* , (a) deciding to proceed with a 16-day cruise on February 21, 2020, knowing at least one of its

passengers from the prior voyage had symptoms of coronavirus; (b) deciding to conceal from passengers at any time prior to boarding and/or while they were already onboard that there were   passengers on the prior voyage with symptoms of the coronavirus and/or other passengers with symptoms of the coronavirus on the subject voyage; and (c) deciding to wait one day to order passengers to isolate in their staterooms after being informed that the passenger who presented to the *Grand Princess* medical facility with symptoms of the coronavirus on February 20, 2020, tested positive for COVID-19.  This conduct is made more outrageous by the fact that this conduct was motivated by Defendant's desire to make profit rather than ensure the reasonable safety and welfare of its passengers.

74.    Defendant's conduct caused the Plaintiff and others similarly situated, and all those similarly situated, to suffer through the fearful conditions alleged above.

75.    All of the conditions previously alleged and endured by the Plaintiff and others similarly situated caused severe suffering and emotional distress as these conditions not only led to immediate risk of physical harm but also caused severe discomfort, anxiety, feelings of helplessness/hopelessness.

76.    The conduct of Defendant as alleged above is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Put simply, Defendant recklessly and intentionally put thousands of its passengers through a living nightmare so it could protect its bottom line.

77.    As a result of the intentional inflection of emotional distress by Defendant, Plaintiff and all those similarly situated were:

a.    exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of developing COVID-19, with physical manifestations of that mental and

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.    contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff and others similarly situated will suffer the losses and impairments in the future.

WHEREFORE the Plaintiff and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## Prayer for Relief

WHEREFORE, the Plaintiff and all others similarly situated respectfully request the Court enter judgment in their favor and against the Defendant as follow:

1.    To enter an order certifying the proposed Class pursuant to Fed. R. Civ. P. Rule 23(a), (b)(1-3), and/or (c)(4), designating Plaintiff as named representative of the Class and designating the undersigned as Class Counsel;

2.    To enter judgment in favor of the Plaintiffs against Defendant on all

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Plaintiff's Class Action Complaint and Demand for Jury Trial

causes of action as alleged herein;

3.  To award compensatory damages in the amount to be ascertained at trial;

4.  To award punitive damages, as permitted by law;

5.  To award costs of suit, as permitted by law;

6.  For prejudgment interest according to proof; and

7.  To enter such other and further relief as the Court deems just under the circumstances.

DATED:   June 4, 2020          LIPCON MARGULIES ALSINA & WINKLEMAN, P.A.



BY: *s/ Carol L. Finklehoffe*
    _____
    CAROL L. FINKLEHOFFE
    *Attorney for Plaintiffs*



## Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims for relief.


                               LIPCON MARGULIES ALSINA & WINKLEMAN, P.A.
DATED:   June 4 2020.



BY: *s/ Carol L. Finklehoffe*
    _____
    CAROL L. FINKLEHOFFE
    *Attorney for Plaintiffs*

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204